UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10139-GAO

PHILLIP GOLDSTEIN,
Plaintiff,

v.

WILLIAM F. GALVIN, SECRETARY OF THE COMMONWEALTH OF
MASSACHUSETTS,
Defendant.

OPINION AND ORDER
September 28, 2012

O'TOOLE, D.J.

The plaintiff, Phillip Goldstein, brings this action under 42 U.S.C. § 1983 against William Galvin, Secretary of the Commonwealth of Massachusetts, alleging violations of his First Amendment rights. The defendant has moved to dismiss.

## I. Background

The plaintiff is a principal of Bulldog Investors General Partnership Inc. ("Bulldog"), which oversees certain hedge funds. Bulldog operated an interactive website that provided information about the funds. In November 2006, a Massachusetts resident sent an inquiry to the website and received an electronic mail response. The plaintiff is an outspoken critic of hedge fund regulation, and he had successfully challenged a hedge fund advisor registration rule issued by the federal Securities and Exchange Commission that was invalidated by the United States Court of Appeals for the District of Columbia Circuit in June 2006. This brought the plaintiff a degree of notice within the securities industry.

The defendant, the Secretary of the Commonwealth of Massachusetts, is charged with enforcing the Massachusetts Uniform Securities Act, which prohibits the offering of unregistered, nonexempt securities within Massachusetts. Mass. Gen. Laws ch. 110A, §§ 301, 406(a). According to the present complaint, on January 31, 2007, "Secretary Galvin induced prosecutorial advocates in the Enforcement Section of the Massachusetts Securities Division to file and serve on Goldstein [an] administrative complaint." (Am. Compl. ¶ 19 (dkt. no. 23).) The administrative complaint alleged that the "respondents, including Goldstein, had illegally offered unregistered securities in Massachusetts by operating a publicly accessible website and by responding by electronic mail to an electronic request sent by a Massachusetts resident." Id. Commenced an adjudicatory administrative proceeding against the plaintiff, Bulldog, and its other related entities and persons, charging them with violations of Section 301 of the Uniform Securities Act. Mass. Gen. Laws. Ch. 110A § 301. On that same date, the defendant made a one sentence media announcement on the Secretary of State's website about the case. It stated, "Secretary Galvin charges Phillip Goldstein and Bulldog Investors for unregistered securities offering." (Id. at Ex.4, 2.) The complaint alleges that it was contrary to the Secretary's usual practice of not identifying individual respondents by name in such public announcements. (Id. at ¶ 24.) Eventually, after hearing, the acting director of the Securities Division entered an order finding the respondents in violation and imposing a cease and desist order against Bulldog as well as a monetary fine.

In March 2007, Goldstein and the other respondents in the administrative proceeding filed an action against the Secretary and another in Massachusetts Superior Court, alleging that the administrative enforcement proceeding violated their First Amendment rights, because the enforcement action was illegitimately brought to "chill" expression the Secretary disfavored.

They sought an injunction against the conduct of the administrative proceeding. After a bench trial, the Superior Court judge found in the Secretary's favor. The Supreme Judicial Court later affirmed, holding that "the challenged statute, regulations and enforcement action did not violate the First Amendment rights" of Goldstein or Bulldog. Bulldog Investors Gen. P'ship v. Sec'y of the Commonwealth, 953 N.E.2d 691, 696 (Mass. 2011).

The plaintiff and others also sought judicial review of the final administrative enforcement order under the Massachusetts Administrative Procedure Act. Again, the Superior Court entered judgment for the Secretary, and the Supreme Judicial Court affirmed. Bulldog Investors Gen. P'ship v. Sec'y of the Commonwealth, 929 N.E. 293, 302 (Mass. 2010).

While the prior two cases were pending on appeal, the plaintiff filed this case, again First Amendment violations under § 1983 and suing the defendant in his individual capacity for damages, and both his individual and official capacities for declaratory relief. After an amended complaint was filed, the defendant filed the present motion to dismiss.

## II. Discussion

The plaintiff here complains of two actions taken by the Secretary. First, he claims that the Secretary's enforcement action was in retaliation against the plaintiff for his advocacy, and second, he claims that the defendant's media statement announcing the commencement of the enforcement action had an "intimidating and chilling" effect on his speech. (Pl.'s Opp'n to Motion to Dismiss at 16 (dkt. no. 32).)

### A. Absolute Immunity

The Secretary first argues that the claim based on the initiation of the enforcement action is barred by the doctrine of prosecutorial immunity. It is settled that prosecutors enjoy absolute immunity in initiating criminal prosecutions. Butz v. Economou, 438 U.S. 478, 515 (1978). This

immunity is extended to administrative agency officials who perform functions analogous to a prosecutor's. Id. Like prosecutors, agency officials must have broad discretion in bringing administrative enforcement actions and determining appropriate sanctions. Id. The plaintiff argues that the Secretary was not acting in the capacity of an administrative prosecutor here, but rather he "induced prosecutorial advocates" to file the administrative complaint. (Am. Compl. ¶ 19.) He points to the fact that the administrative pleadings were not signed by the Secretary himself. The plaintiff's aim in this artful pleading is to take advantage of those cases that find persons who are not prosecutors, such as investigators, are not covered by the immunity doctrine though they may "induce" the prosecution. See Hartmann v. Moore, 547 U.S. 250 (2006). The argument lacks merit. The Massachusetts Uniform Securities Act specifically states that the Act "shall be administered by the Secretary" Mass. Gen. Laws ch. 110A § 406(a) and that the Secretary has the discretion to institute investigations and proceedings to enforce the Act. Id. at §407(a), (d). The Secretary is not some outside stranger to the prosecution of enforcement actions; he is in charge of them. See Mass Gen Laws ch. 9 § 10A ("For the administration and enforcement of chapter one hundred and ten A the state secretary may employ such assistants and other employees as required.") In "inducing" the prosecution, the Secretary was acting directly within his authorized power to enforce the securities laws of the Commonwealth. His actions in exercising that power are covered by the absolute immunity extended to prosecutors.

The plaintiff also argues that "[a]bsolute immunity does not extend to a single official who is empowered to exercise legislative, investigative, prosecutorial, adjudicatory and public relations functions." (Def.'s Opp'n at 3.) It is essential to note that the defendant's dual prosecutorial and adjudicatory roles are statutorily prescribed. See Mass. Gen. Laws ch. 110A §§ 406-415. The First Circuit has addressed situations in which the official in question fulfills dual

4

roles and found that an official is still entitled to absolute immunity from individual capacity liability. Wang v. N.H. Bd. of Registration in Med., 55 F.3d 698, 701 (1st Cir. 1995). See also Bettencourt v. Board of Registration in Med. of Commonwealth of Mass., 904 F.2d 772, 782-83 (1st Cir. 1990). The court further prescribes that such individuals are "absolutely immune from suit, in their individual capacities, on section 1983 claims arising out of their respective judicial, quasi-judicial and/or prosecutorial functions, even though they acted 'maliciously and corruptly'." Id. (citations omitted).

Here, the statutorily prescribed functions of the defendant are within the confines of the First Circuit's construction of absolute immunity. Thus, in exercising both his prosecutorial and quasi-judicial functions as Secretary of the Commonwealth, the defendant is entitled to absolute immunity.

### B. Qualified Immunity

The Secretary acknowledges that absolute immunity does not apply to the claim regarding the media statement. However, a state actor may also be entitled to qualified immunity from claims made under § 1983. The application of the qualified immunity doctrine involves two steps. The court must consider "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009) (quoting Pearson v. Callahan, 555 U.S. 223, 233 (2009)).

The amended complaint alleges that the plaintiff's exercise of his First Amendment rights was chilled by the posting of the media statement. The statement was indisputably true; the Secretary had in fact initiated an action against the plaintiff. The argument seems to be that the

plaintiff had a right not to have a truthful public statement made about him when the official acts with a subjective motive to harm the person who is the subject of the publication.

A right is clearly established for qualified immunity purposes if "a reasonable official is on clear notice that what he or she is doing was unconstitutional." Cortes-Reyes v. Salas-Quintana, 608 F.3d 41, 52 (1st Cir. 2010). An official is entitled to qualified immunity if he "reasonably could have believed on the facts before him that no violation existed." Phillip v. Cronin, 537 F.3d 26, 34 (1st Cir. 2008). The plaintiff has not met his burden to prove the right he claims was clearly established. See Davis v. Scherer, 468 U.S. 183, 197 (1984). The defendant's media statement was a truthful comment about a lawful enforcement action; it reports a fact. It is not like a statement that threatens retaliation. See Blankenship v. Manchin, 471 F.3d 523, 525 (4th Cir. 2006). A reasonable official in the Secretary's position would not have been on notice that an accurate, non-inflammatory statement that an enforcement action had been commenced violated the First Amendment rights of the person identified in the statement as the target of the enforcement. The defendant is entitled to qualified immunity as to that part of the plaintiff's claim that arises from the media announcement.

  C.  Declaratory Relief

The Declaratory Judgment Act is designed to help litigants "clarify legal rights and obligations before acting upon them." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995). Since declaratory relief is discretionary, the act offers only a "window of opportunity, not a guarantee of access." Id. Thus the court has the ultimate authority to determine whether or not declaratory relief is an appropriate remedy. Bilida v. McCleod, 211 F.3d 166, 175 (1st Cir. 2000). See also El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st

Cir. 1992). In light of the discussion above, it is clear that declaratory relief in the plaintiff's favor is not appropriate in this case.

## III. Conclusion

For the foregoing reason, the defendant's Motion (dkt. no. 28) to Dismiss the Amended Complaint is GRANTED. The clerk shall enter a judgment dismissing the action.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge